In the Matter of Albert E. **FORNEY** and Juanita I. Forney, Bankrupts.

The **UNITED STATES** of America, Appellant,

v.

**Raymond A. FLYNN**, Trustees, Appellee.

No. 13523.

United States Court of Appeals Seventh Circuit.

Feb. 27, 1962.

504

James P. O'Brien, U. S. Atty., Chicago, Ill., Morton Hollander, Chief, Appellate Section, Jerome I. Levinson, Atty., U. S. Dept. of Justice, Washington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., John G. Laughlin, Atty., Dept. of Justice, Washington, for appellant.

Harold R. Nettles, Freeport, for appellee.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Raymond A. Flynn, trustee in bankruptcy of the estate of Albert E. and Juanita I. Forney, filed a petition before the referee to have a lien of the United States declared void. The government, as mortgagee under a Farmers' Home Administration mortgage, had asserted the lien against a portion of the proceeds of a sale of certain mortgaged property. The proceeds to which claim is made are now in the hands of the trustee. The referee granted the petition. Upon review the District Court affirmed; this appeal followed.

The relevant facts are not in dispute. On January 28, 1959, Albert E. Forney executed a crop and chattel mortgage to the United States to secure payment of a loan of $12,200 from the Farmers' Home Administration. The mortgage was duly recorded.

On January 11, 1960, when the indebtedness was $11,002.25, the government, at mortgagors' request, entered into an agreement for a public sale of the

mortgaged property. Paragraph five of the agreement reads as follows:

"5. The Borrower hereby assigns to the Government, to the extent of its interest, until his debt owed to or insured by the Government is fully paid: (a) The proceeds of said sale, after expenses of the sale and prior lienors, if any, are paid. * * * By consenting to the sale, the Government does not waive its lien, except for the purposes of the said sale, and on condition that the sale be held strictly in accordance with this agreement: and the Government's lien shall attach to the proceeds of the sale."

Paragraph six provided that the clerk of sale or other person signing the agreement who might receive the proceeds of the sale would agree to hold the proceeds in trust to be paid according to the terms of the agreement.

The mortgaged chattels, together with other Forney property, were sold at a public auction conducted by Freeport Auction Service, January 28, 1960. Gross proceeds of the sale amounted to $20,273.58. $7,499.50 was owed to persons other than the United States for property not mortgaged, leaving $12,774.08 in the fund, of which $11,387.30 was turned over to the trustee after the Forneys were adjudicated voluntary bankrupts on February 9, 1960. The government then filed its proof of claim for the mortgage indebtedness and asserted its lien by virtue of the chattel mortgage.

The referee found, (1) the government had waived its lien by consenting to the sale of the mortgaged property; (2) the assignment of the proceeds of sale by the agreement of January 11, 1960, within four months of the bankruptcy petition, constituted a voidable preference under section 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a; and (3) the agreement for sale was an executory contract which was deemed rejected by the trustee under Section 70, sub. b of the Act, 11 U.S.C.A. § 110, sub. b.

Since it is not disputed that the mortgage of January 28, 1959 created a valid lien, we must first resolve the question whether this lien was waived by the government's consent to the sale and thereby, under applicable Illinois law, subject to attack by the trustee under Section 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e.

The government contends that the controlling law is expressed in Acme Feeds, Inc. v. Daniel, 312 Ill.App. 330, 38 N.E. 2d 530.

In Acme a bank was mortgagee of a duly recorded chattel mortgage covering ninety-one hogs. Prior to executing the mortgage Daniel had given Acme Feeds, Inc. a bill of sale and conditional sales agreement on the same hogs to secure payment for feed. The latter instruments were not recorded. Before the loan secured by the mortgage was due Daniel requested and obtained oral permission of the bank to sell some of the hogs, on condition that he would remit the proceeds to the bank to be applied to the mortgage indebtedness. Daniel then sold the hogs through commission merchants with instructions to remit the proceeds to the bank. Before the commission merchants complied, Acme garnished the proceeds. Acme had had knowledge of the mortgage but disputed the priority of the lien. The court stated the issue as follows:

"The fundamental question involved in this proceeding is whether the sale of the mortgaged chattels, with the bank's consent and upon the condition that the proceeds of the sale would be applied in payment of the mortgaged debt, had the effect of releasing the chattels from the lien of the mortgage." Supra, at 333, 38 N.E.2d at 532.

The court went on to say that Illinois courts had not passed on this precise question and relying on analogous cases the court concluded:

" * * * where the mortgagee consents to the sale of chattels by

the mortgagor on condition that the proceeds of the sale will apply on the mortgage debt, both parties acting in good faith, the lien of the mortgage is not discharged and the mortgagee does not lose his right to the proceeds by such consent. In J. I. Case Threshing Machine Co. v. Rominger, supra [77 Colo. 595, 238 P. 63, 64], the court pertinently inquired, 'What objection can there be to a sale by the mortgagor and mortgagee together for the purpose of paying the mortgage debt?', and answered the inquiry by saying, 'we can see none, and that is what the agreed statement shows that they did.'" Supra at 337, 38 N.E.2d at 533.

We think the facts in the instant case are not legally distinguishable from those in Acme. The provisions of the agreement expressly stated that the government did not intend to release its lien. On the contrary, the government took greater precautions in the instant case than the bank did in Acme in that the clerk of the sale was designated as trustee to receive the proceeds and distribute them subject to existing liens.

The referee relied upon United States v. Christensen, D.C., 50 F.Supp. 30, which was decided after Acme, as expressing the Illinois law in point. There the government agreed to the sale of a tractor covered by its mortgage on condition that the proceeds be paid to the mortgagor and mortgagee jointly. When the proceeds were not paid over, the government sought to replevin the tractor from the purchaser. The court held that the government agent signing the agreement did not have authority to consent to the sale and therefore allowed the replevin. In a dictum, however, which the referee relied upon, the court said:

"In Illinois a chattel mortgagee's consent to sale of mortgaged property by the mortgagor, followed by sale pursuant thereto, constitutes a waiver. Aleshire v. Lee County Sav.

Bank, 105 Ill.App. 32; Farmers' & Merchants' Bank v. Arnold, 58 Ill. App. 349; Elzy v. Morrison, 180 Ill. App. 711; William Deering & Co. v. Washburn, 141 Ill. 153, 29 N.E. 558; John Deere Plow Co. v. Herschbarger [Sic], 260 Ill.App. 227; * * *." Supra, at 32.

■ An examination of the Illinois cases cited by the court in Christensen reveals that all are distinguishable from the instant case. The distinction is that while as a general proposition a mortgagee waives his lien when he consents to a sale of the mortgaged property, nevertheless, when the consent is for a sale not in the course of the mortgagor's business and is conditional on an agreement to apply the proceeds to the mortgage debt, there is no waiver of the lien which then attaches to the proceeds of sale.

We believe Acme states the applicable Illinois law and that it was therefore error to hold that the government's consent to the sale was a waiver of its lien.

■ As an additional ground for voiding the government's lien the referee stated that the assignment of the proceeds of the sale to the government, which occurred within four months of the petition in bankruptcy, was a preference as defined by Section 60, sub. a of the Act. In order to constitute a preference there must be diminution of the assets properly available to some other creditor of the same class as the creditors receiving the preference. The government became a lienor by virtue of the mortgage on January 28, 1959, more than four months before the petition in bankruptcy. Thus, the assignment of proceeds was a transfer in satisfaction of a valid existing lien which transfer could in no way diminish the assets available to general creditors or other secured creditors.

■ As a third ground for voiding the government's lien the referee ruled that the agreement for sale constituted an executory contract which was deemed

to have been rejected by the trustee under Section 70, sub. b of the Bankruptcy Act. Although the agreement for the sale was not fully performed at the time of adjudication in that the remaining proceeds had not been disbursed to the mortgagee, we are of the view that this is not the type of contractual situation to which the statute is applicable. The act necessary to give rise to the obligation to disburse the proceeds under the agreement, namely the sale of the property free of the mortgage, had been fully performed. Accordingly, the agreement was no longer an executory contract within the meaning of the statute but a partially executed contract, executory only as to the obligation to transfer the proceeds of the sale to the mortgagee. Cf. In re San Francisco Bay Exposition, D. C., 50 F.Supp. 344; 4 Collier, Bankruptcy § 70.43, at 1350.

■ Lastly, the trustee contends the mortgagee must identify the property it claims a lien upon in order to be entitled to the proceeds of the sale from specific chattels and that the government failed to make such identification. It would appear from a comparison of the mortgage and the agreement for sale that the latter covered certain property not listed in the mortgage and also other property not identifiable as chattels listed in the mortgage. The trustee raised this point before the referee. The referee found that the "list of property appearing in the agreement does not correspond with the list of property appearing in the chattel mortgage", that no report of sale had been introduced in evidence and that he was "unable to determine from the record what has been or is still to be paid from the fund under the provisions of the agreement." Because of the inadequacy of these findings in determining to what extent, if any, the fund includes proceeds from the sale of unmortgaged chattels, we are of the view that there must be a remand for the purpose of making the determination.

Reversed and remanded.