SCOTT & MAYHALL v. LUBBOCK GRAIN & COAL COMPANY.

No. 3382.    Decided June 13, 1923.

(252 S. W., 164.)

**Venue—Contract—Shipment—Guaranty of Weight at Destination.**

On a sale and shipment of cane seed, with draft for price attached to the bill of lading consigning it to shipper's order, a guaranty of weight at destination by the shipper is a contract in writing to perform an obligation in that county, within the meaning of Rev. Stats., Art. 1830, par. 5. Suit to recover for shortage in the weight may be brought in that county, though the shipper resided elsewhere; and this irrespective of whether or not the title passed to the purchaser on delivery by the seller to the carrier. (Pp. 129-131).

Questions certified by the Court of Civil Appeals for the Seventh District, in an appeal from Lubbock County.

The Supreme Court, having referred the question to the Commission of Appeals, Section B, for its opinion thereon, here adopts same as its answer to the questions.

*R. A. Sowder,* for appellant.

When the statutory plea of privilege has been filed the court should transfer the cause, unless it appears that some of the exceptions to exclusive venue in the county of residence of defendants, mentioned in Arts. 1830 or 2308, exist in the case. Lee v. Gilchrist Cotton Oil Co., 215 S. W., 977; Griffith v. Gohlman-Lester Co., 200 S. W., 233.

*Roscoe Wilson* for defendants in error.—No briefs were on file.

MR. PRESIDING JUDGE McLENDON delivered the opinion of the Commission of Appeals.

This case arises upon certified questions from the Court of Civil Appeals. The controlling facts, as shown by the certificate, are:

"The appellee, Lubbock Grain & Coal Company, sued appellants, Scott & Mayhall, to recover as damages $712.75, alleged to have been paid on a shipment of cane seed. This sum is alleged to be due by reason of the shortage in the weight of the seed at destination—Lubbock. That the appellant had guaranteed in writing the grades and weights at destination, which was alleged to be in Lubbock county; that the appellant drew on the appellees for the amount, with bill of lading attached; that the bill and draft were for certain weights specified but which in fact were short, alleging the number of pounds of the shortage at Lubbock. The suit was brought in the County Court of Lubbock County. The appellants filed their pleas of privilege to be sued in the county of their residence, which was alleged to be in Deaf Smith County. The pleas are in proper form. These pleas were controverted by appellee, on the ground that appellants contracted in writing to guarantee the destination weights at Lubbock and that the contract was performable in Lubbock county. The appellants, Scott & Mayhall, at the time of making the contract, the shipment of the seed, and at the trial, were a partnership, doing business in Hereford, Deaf Smith County, Texas, and both resided in that county at the dates mentioned. The following is the contract in writing, relied upon:

'February 19, 1918.

Scott & Mayhall,
Hereford, Texas.
Gentlemen:

We confirm purchase from you of about 80,000# of good, average country run red top cane seed, equal to sample submitted, and about 10,000# of Japanese seed, ribbon cane, at $10.25 per 100#, f. o. b. Hereford, Texas, sacked in good, second hand sacks, destination weight guaranteed. Shipment as soon as possible within ten days. Unless otherwise instructed, bill to us at Lubbock, loading in two cars. Send draft with B/L attached to Lubbock State Bank.

Respectfully,
Lubbock Grain & Coal Company
By J. D. Quick.

Accepted: Scott & Mayhall,
By J. A. Hayhaw.'

"On February 26, 1918, appellant shipped the grain, drawing draft for $6,775.47 and attaching thereto a bill of lading issued by the Railway Company, the carrier, over whose line the shipment was made, naming Scott & Mayhall consignors and to the order of Scott & Mayhall, destination Lubbock, Texas, notify Lubbock Grain & Coal Company. Also attached to the draft and bill of lading was a bill of the seed, or an invoice, which reads:

"Sold to Lubbock Grain & Coal Company, Lubbock, Texas. Terms: Cash, sight draft, B/L attached, giving the weight and price of the seed. The appellee paid the draft at Lubbock State Bank, March 2, 1918, and the seed were then delivered to them and unloaded in their warehouse at Lubbock, Texas. The only question to be determined is whether the court was in error or should be sustained in refusing to change the venue of this case to Deaf Smith County."

The two questions certified follow:

"(1) Did the trial court correctly refuse to change the venue of the suit to Deaf Smith county?

"(2) Was the venue properly laid in Lubbock County?"

The statute relied upon by appellant as laying the venue in Lubbock County provides that no resident of this State shall be sued out of the county of his domicile except:

"5. Where a person has contracted in writing to perform an obligation in any particular county, in which case suit may be brought either in such county, or where the defendant has his domicile." R. S., 1830(5).

There are a number of cases by the several Courts of Civil Appeals which hold that where goods are ordered to be shipped by carrier consigned to shipper's order at destination, and paid for by draft with bill of lading attached drawn on the buyer through a bank at destination, the transaction constitutes a contract in writing by the seller to deliver to the buyer at destination; and that suit for breach of such contract may be brought by the buyer against the seller in the county of destination. Sealey v. Williams, 20 Texas Civ. App., 405, 50 S. W., 399; Callender, Holder, & Co. v. Short, 34 Texas Civ. App., 364, 78 S. W., 366; Harris v. Salvato, 175 S. W., 802; Kelsey v. Elevator Co., 206 S. W., 849; Harris v. Moller, 207 S. W., 961; Gottlieb v. Dismukes, 230 S. W., 792; Landa v. Ainsa, 231 S. W., 175. To the same effect are Ice Co. v. Refining Co., 182 S. W., 1163, (writ of error refused) and Oil Co. v. Refining Co., 118 S. W., 194. But these two cases have the additional element that the seller guaranteed the weights and grades at destination.

The Court of Civil Appeals in a majority opinion followed these decisions. One of the judges, however, dissented upon the holding in Orthwein v. Elevator Co., 32 Texas Civ. App., 600, 75 S. W., 364, (writ of error refused) and Robinson v. Ry., 105 Texas, 185, 146 S. W., 537. The latter was a suit by purchasers of a boiler against the railway company for delay in transit. The boiler had been purchased by telephone and shipped from Houston to Gainesville consigned to shipper's order, notify consignee, the bill of lading being attached to a draft for the price drawn on the buyers at Marietta, Oklahoma. The question in the case was whether the buyers could sue for delay accruing prior to the time they paid the draft. We quote from the opinion:

T. C.—9.

"When the Erie City Iron Works sold the boiler to Robinson and Martin and delivered it to the railroad company at Houston, the title vested in the purchasers; neither payment of the price nor actual delivery to the purchaser was necessary to pass the title. Boaz & Co. v. Schneider & Davis, 69 Texas, 128; Cleveland v. Williams, 29 Texas, 204, 94 Am. Dec., 274; Irvin v. Edwards, 92 Texas, 258. The cases in our own reports are so numerous and definite to this proposition that we will not cite other authorities.

"It is true that Robinson & Martin could not have taken possession of the boiler, without consent of the seller, until the price was paid, which right of possession by the Iron Works was asserted and protected by making the delivery conditioned upon payment of the price. The right of property passed to the purchaser when the particular boiler was designated, but the right of possession remained with the seller until the draft was paid.

"The right of plaintiffs in error to recover the damages is alone before this court."

In the Orthwein case the property had been lost in the Galveston storm before delivery to the consignee and the question was whether, at the time of the loss, the title had passed to the latter, who had already paid the draft and taken up the bill of lading. We do not think it necessary to discuss the facts of the case.

The question of when title passes to the purchaser of chattels is, in its last analysis, one of intention to be gathered from the facts and circumstances of each particular case. The fact that the property is shipped by carrier C. O. D. or to the shipper's order with bill of lading attached to a draft for the purchase money, does not necessarily reserve title in the seller until the purchase money is paid. To what extent such fact may evidence an intention to retain title in the seller is a question upon which the authorities are not agreed. This subject is very fully discussed, with a review of authorities, in Hamilton v. Brewing Co., 129 Iowa, 172, 2 L. R. A. (N. S.) 1078, 105 N. W., 438.

We do not think it essential to the question before us to determine whether the title to the property passed upon delivery to the carrier at the point of shipment or upon delivery to the consignee at destination. The statute under consideration gives venue in the county in which the defendant has agreed in writing to perform the contract sued upon. A contract of sale may be made and the title to the thing sold pass to the buyer; and yet the seller may be bound by covenants or agreements connected with the sale which impose further obligations upon him. It may be urged, with no little force, that the express guarantee of weights alone at destination was an exclusion by implication of any other obligation upon the seller subsequent to delivery to the carrier, and that this express provision of the contract

evidenced an intention that the title was to pass to the buyer upon delivery to the carrier, subject only to the guarantee by the seller of destination weights. Without expressing an opinion upon this question, but assuming for the purposes of this case that title passed to the buyer upon delivery to the carrier, we think the contract is not susceptible of other construction than that the seller guaranteed that the weights shown upon delivery at destination should furnish the standard for his performance of the contract. Such contract could not be fully performed except at destination. The seller could not relieve himself from liability under his contract for a shortage in weight at destination by a showing that he delivered to the carrier the quantity (by weight) of cane seed for which the contract called; and this, regardless of the cause of such shortage. Independently of the question of ownership of the seed, there was unquestionably a contract in writing by which the seller guaranteed that he would deliver or that he would be responsible for the carrier's delivering at Lubbock the quantity of seed (by weight) specified in the contract.

Our conclusion is that both certified questions should be answered in the affirmative.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.